Stewart S. Freedman v. Commissioner.
Stewart S. Freedman v. Commissioner
Docket No. 30470.
United States Tax Court
1952 Tax Ct. Memo LEXIS 19; 11 T.C.M. (CCH) 1177; T.C.M. (RIA) 52345; December 5, 1952
Robert S. Marx, Esq., Frank E. Wood, Jr., Esq., Walter M. Shohl, Esq., and James R. Favret, C.P.A., for the petitioner. Lyman G. Friedman, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent has determined a deficiency in income and victory tax for the calendar year 1943 of $127,681.46 and a 50 per cent fraud penalty of $63,840.73. This deficiency also includes an adjustment for 1942 which the petitioner does not now contest. Respondent explained an adjustment to the 1943 income and victory tax as follows: "(b) Cash over-ceiling payments in the amount of $148,559.17 received by you during the taxable year ended December 31, 1943, are included as income by this adjustment. See section 22 (a) of the Internal Revenue Code *20 ." Petitioner alleges that this adjustment and the fraud penalty have been determined erroneously. Findings of Fact Petitioner, a resident of Wyoming, Ohio, filed his tax returns for the calendar years 1942 and 1943 with the collector of internal revenue for the first district of Ohio. Petitioner is 38 years old, married, and has four children; he is an established business man of the Cincinnati, Ohio, area, and has an excellent reputation for truth and veracity. Since 1934 petitioner has engaged in either the distilling business or in a business dealing with warehouse receipts for bulk whiskey in bonded United States warehouses. In 1943 petitioner was president and held 25 per cent of the stock of Pebbleford Distillery Company, a Kentucky corporation. In the same year petitioner was also an equal partner with his father in the Samuel Freedman Company; this partnership acted as a dealer and broker in whiskey warehouse receipts. From February 3, 1943, and throughout the remainder of 1943, sales of whiskey were subject to maximum ceiling prices established by the Office of Price Administration. Josselson Bros., Inc., a wholesale liquor business, purchased whiskey from petitioner *21 and others. Alex Josselson, in 1943 as agent for Josselson Bros., Inc., made five purchases from the Pebbleford Distillery Company and four from the Samuel Freedman Company. Petitioner, as agent for these two businesses, personally made these sales. All nine invoices indicated the sales were within the O.P.A. ceiling prices. The purchase price was paid when the invoices for whiskey warehouse receipts were sent, draft attached, to Ashland, Kentucky. The total amount of whiskey involved was 1,085 barrels and the aggregate invoice price was $69,118.35. On January 8, 1945, two indictments were filed in the United States District Court for the Eastern District of Kentucky. One indictment named petitioner and the Samuel Freedman Company on four counts for violation of the Emergency Control Act. The other indictment named petitioner and the Pebbleford Distillery Company on five counts for violation of the same Act. These nine counts covered in both indictments were the same sales as referred to above. Each count charged an over-ceiling payment to petitioner by Alex Josselson in the same amount as determined by the respondent in this case. The one indictment came on for trial in June 1945. *22 The jury disagreed and upon retrial both defendants were found not guilty on all counts. The other indictment never came to trial for, on April 29, 1946, on motion of the United States Attorney, the District Court dismissed the case. The order of the court in granting the motion said: "No corroboration of the Government's witnesses has been secured since the above mentioned trials and he therefore is of the opinion that the evidence would not be sufficient to convict the defendants in this case." In 1946 petitioner was president and a 50 per cent shareholder of the Old Joe DistilleryCompany, a Kentucky corporation. It was necessary for the Old Joe Distillery Company to obtain certain licenses or basic permits from the Alcohol Tax Unit of the Bureau of Internal Revenue before the distillery could do business. After petitioner, as president, applied for the permits from the Alcohol Tax Unit, the Alcohol Tax Unit gave notice in November 1947 of its contemplated disapproval of the application. The notice of contemplated denial was based in part upon petitioner's previous indictments for O.P.A. violations. Petitioner was given a hearing, and the hearing examiner of the Alcohol Tax *23 Unit found that the charges of O.P.A. violations could not be sustained. The examiner recommended that the permits be issued. Petitioner did not receive any money from Josselson in 1943 in violation of O.P.A. ceiling prices in the nine transactions mentioned above. Opinion The first issue before us is a pure question of fact. The respondent contends that petitioner received an aggregate of $141,785 in excess of established O.P.A. ceiling prices and that this sum was not reported as income on petitioner's 1943 income tax return. [1] Respondent contends that petitioner received this amount in cash in nine separate transactions involving the sale of whiskey. In each sale petitioner was the vendor and Alex Josselson was the purchaser. Petitioner, on the other hand, denies that he received this sum or any other sum in excess of O.P.A. ceiling prices on these nine whiskey sales. The respondent's case is based primarily on the testimony of Josselson who said that he paid petitioner an aggregate of $141,785 in over-ceiling payments. Petitioner's case is based on his own testimony wherein he denies the receipt of these payments. In resolving the issues presented, we must be guided by the *24 established rules relating to burden of proof. However, in the last analysis, we must determine who, as between petitioner and Josselson, has related the true story. At the hearing we observed the demeanor of the witnesses and their answers on direct and cross examination. We have carefully considered their testimony with the documentary evidence presented to us, and we conclude that petitioner has complied with the well-established rule that he has the burden of proving error in respondent's deficiency determination. The petitioner testified, and he categorically denied the receipt of any payment from Josselson in excess of O.P.A. ceiling prices. Josselson's testimony diametrically opposed petitioner's statements; however, Josselson made an extremely poor witness. From memory Josselson was unable to satisfactorily account for any of the alleged overpayments. When he was permitted to refresh his memory from a memorandum, the memorandum offered no perceptible aid to his memory. He only read the sums and the dates as written on *25 the memorandum. The memorandum itself was a record of the alleged overpayments, and Josselson compiled it from memory a year after the sales were completed. It was prepared during a time when Josselson himself was being investigated for moneys received from his own O.P.A. violations. Invoices of the nine contested sales were presented as evidence and on their face these invoices indicated no violation of the ceiling prices. This is documentary evidence which establishes prima facie, at least, that the sales were made at lawful O.P.A. ceiling prices. There is no other documentary evidence, dated as contemporary with the sales, that would indicate a violation of the ceiling prices. When Government counsel confronted petitioner with a question regarding large deposits in a year subsequent to these nine sales, petitioner satisfactorily explained the source of each and every deposit. It is interesting to note that the overpayments were allegedly made in cash, whereas most of the deposits were business checks rather than cash. We recognize that there is a presumption in favor of respondent, but when the record as a whole is considered, there is no doubt that this presumption is overcome *26 and that petitioner has sustained his burden of proof. On the first issue we must find for the petitioner. The fraud issue is dependent upon a finding that part of the deficiency was due to fraud with intent to evade tax. Section 293, I.R.C. In addition to the money involved in the first issue, respondent made other adjustments to petitioner's 1942 and 1943 net income; however, respondent only alleged that the sum of $141,785 was omitted from petitioner's 1943 return for the purpose of evading tax. Since we have found that there was no deficiency as to the $141,785, there can be no fraud penalty on this sum. Therefore, petitioner must be sustained on the fraud issue. Decision will be entered under Rule 50. Footnotes
1. In the deficiency notice respondent determined that $148,559.17 was the sum in question, but on brief concedes that $141,785 is the proper amount.↩